# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**UNITED STATES OF AMERICA**

v.                                           **CASE NO: 8:16-CR-305-T-36AEP**

**DENNY ANDRES MERO ANCHUNDIA**
_____/

## SENTENCING MEMORANDUM IN SUPPORT OF A MINOR ROLE REDUCTION AND/OR A DOWNWARD VARIANCE PURSUANT TO 18 U.S.C. §3553(a)

COMES NOW, the Defendant, DENNY ANDRES MERO ANCHUNDIA, by and through undersigned counsel and pursuant to U.S.S.G. §3B1.2, U.S.S.G. §2D1.1(a)(5), and 18 U.S.C. §3553(a), hereby files this Sentencing Memorandum in support of his previously-lodged minor role objection and in further support of a reasonable sentence, which is not greater than necessary to accomplish the purposes of sentencing enumerated in 18 U.S.C. §3553(a)(2). Mr. Anchundia respectfully moves this Honorable Court to sustain his minor role objection, to grant the Government's "substantial assistance" motion, should one be filed, and based upon the factors enumerated in 18 U.S.C. §3553(a), to impose a total sentence no greater than 60 months of incarceration (or in the alternative ten years) to be followed by a 5-year term of supervised release. As grounds in support thereof, Mr. Anchundia shows as follows:

## FACTUAL AND PROCEDURAL HISTORY

Denny Andres Mero Anchundia is a 24-year-old man who was born in Ecuador on December 27, 1991. PSR - Initial ¶34. Mr. Anchundia does not like to discuss his father, but we know from a letter written by his mother to this Court that Jose Luis Mero Posligua left the family nine years ago, seemingly after Mr. Anchundia's youngest sibling was born. *See* Attachment A (two letters from the defendant's mother and his siblings, each in their Spanish and English-translated versions). Both of these letters explain the poverty this family endured before the earthquake, and the further hardships they faced after the disaster in April 2016. *Id*. Photographs sent by the family depict them together, with Mr. Anchundia as the eldest male of this group. *See* Attachment B (nine total photographs). These pictures also show Mr. Anchundia's newborn baby girl Kenya Piarina, who was born on the day he was interdicted by the U.S. Coast Guard. *Id*. The images are also of the home after the earthquake, a home that had been made of reeds with a tin roof that had electricity, but no running water or indoor plumbing. *Id*; PSR - Initial ¶37. After the earthquake this humble residence gave even less shelter to the family and remains at risk for collapse. *See* Attachment A.

Mr. Anchundia will only express that he has a terrible relationship with his father and holds a lot of resentment toward him, seemingly for what the father did to the family years ago. PSR - Initial ¶35. Mr. Anchundia has helped support his

mother and siblings for many years, beginning at a young age when he left after only one year of schooling to start fishing. PSR - Initial ¶44. Mr. Anchundia is illiterate in Spanish and cannot read or write his own name. *Id*. He learned the fishing trade and has made a living in that industry for his entire life, bringing in $150-200 every month depending on the catch. PSR - Initial ¶45. Over the years, Mr. Anchundia developed medical conditions, including symptoms that sound like high blood pressure (headaches, blurry vision, and heart palpitations). PSR - Initial ¶40. He also developed a habit of binge drinking a few times a month, which is something he hopes to receive treatment for while in prison. PSR - Initial ¶42. Mr. Anchundia's anger toward his father, his medical issues, and his substance abuse may all be improved by counselling. Mr. Anchundia states that he would be grateful for an opportunity to discuss these mental health issues in confidence during his incarceration. Furthermore, he is asking to become literate in Spanish and learn to speak English, participate in UNICOR, and take vocational-educational courses in electricity.

As this Court is well aware, a major earthquake hit Ecuador last spring, which halted the fishing industry and the country's entire economy. Food, water, and medical supplies became scarce. At that time, not only was the Anchundia home damaged, but Mr. Anchundia's girlfriend was in her third trimester carrying their daughter who would later be born on June 28, 2016, just as Mr. Anchundia

was being interdicted. Due to this extreme financial hardship, Mr. Anchundia accepted an offer as a mariner on a boat that he knew would be carrying narcotics. He stated that he did so to build his mother a new home. PSR - Initial ¶15. For this venture he was to receive $3,000 up front and another $30,000 if the trip was a success. *Id*. Mr. Anchundia is extremely remorseful for his decision, and he understands that he must now be punished for his illegal conduct.

## GUIDELINE CALCULATIONS

Because Mr. Anchundia was involved in a cocaine trafficking conspiracy that involved more than 450 KG, pursuant to U.S.S.G. §2D1.1(c)(1), his base offense level is calculated in the Presentence Report to be a level 38. PSR - Initial ¶12. As a result of his qualification for the "safety value" provision, Mr. Anchundia's base offense level is reduced by 2-levels, resulting in an adjusted offense level of 36. PSR - Initial ¶¶18, 22. With a 3-level reduction for "acceptance of responsibility" it is suggested that the total offense level is 33. PSR - Initial ¶¶24-26. Mr. Anchundia has no prior arrests, convictions, or contacts with law enforcement and, as such, is a criminal history category I offender. PSR - Initial ¶¶27-32. With a total offense level of 33 and a criminal history category I, Mr. Anchundia's advisory guideline imprisonment range is **135 - 168 months** (11 years, 3 months - 14 years). PSR - Initial ¶49. He is facing a mandatory ten years' imprisonment. PSR - Initial ¶48.

In the Presentence Investigation Report, Mr. Anchundia is not given any reduction for his role in the offense. PSR - Initial ¶20. He objects to not receiving, pursuant to U.S.S.G. §3B1.2(b), a 2-level minor role reduction and a corresponding reduction in his base offense level pursuant to U.S.S.G. §2D1.1(a)(5). *See* PSR – Final, Addendum (defense objections provided to the government and U.S. Probation on November 3, 2016). Mr. Anchundia incorporates his minor role objection by reference, and adds that if this Court were to grant this objection *and* have the ability to sentence Mr. Anchundia under the statutory minimum 10 years' prison pursuant to a §5K motion, the following guideline calculation will result:

| | | |
|---|---|---|
| Base | 38 | (§2D1.1(c)(1)) |
| Minor Role | -2 | (§3B1.2(b)) |
| Base Reduction | -4 | (§2D1.1(a)(5)) |
| Safety Valve | -2 | (§§5C1.2, 2D1.1(b)(17)) |
| Cooperation | -2 | (§5K1.1) |
| Acceptance | -3 | (§3E1.1(a-b)) |
| Total Offense Level | 25 | |
| Category | I | |
| Advisory Range | **57-71 months** | |

In the present case, Mr. Anchundia argues that a sentence within this range is reasonable, or if a §5K is not filed or not granted, a 10-year term of prison is appropriate both for the reasons stated in the minor role objection as well as the §3553(a) argument made below.

In furtherance of his previously-lodged formal minor role objection, Mr. Anchundia adds further factual argument. First, Mr. Anchundia notes that he is less

5

culpable than the individual who recruited him to participate in the smuggling operation, the individuals organizing the transportation of the cocaine, the buyers of the cocaine, the sellers of the cocaine, and the drug dealers who will ultimately distribute the cocaine. Factually, Mr. Anchundia was hired by a Colombian/Ecuadorian drug trafficking organization to act as a mere courier by transporting cocaine from "point A" to "point B" while on-board a go-fast vessel. He was to receive financial compensation for transporting the drugs and he had no ownership or proprietary interest in the drugs. As with most mariners, Mr. Anchundia had neither knowledge nor control over of the quantity of cocaine that would be loaded onto the boat. He was not tasked with anything on the distribution end once the boat arrived at its last waypoint. To put it simply, even within the relevant conduct of this case, he was being paid to perform only the limited task of acting as a "deckhand" during the transportation of drugs from one country to another by way of the open sea and nothing more.

Second, in analyzing the clarifying, non-exhaustive list of factors in the recent amendment to the minor role guideline, it is clear that each and every factor would support Mr. Anchundia receiving a reduction. As a simple courier or transporter of drugs:

> (i) He had little or no degree of understanding of the scope and structure of the overarching criminal activity; he was simply instructed to assist in the transportation of the cocaine from point A to point B.

6

(ii) He had no role in the planning or organization of the criminal activity, including no role in the planning or organization of this transportation operation itself.
(iii) He had no decision-making authority, nor did he have any influence regarding the exercise of decision-making authority. He simply followed the directions of others.
(iv) The nature and extent of his activity and participation was limited to his assistance with the transportation of packages of cocaine from "point A" to "point B"; he had little or no responsibility or discretion in performing these transportation functions, and at all times during the transportation took direct orders from someone else.
(v) The only benefit Mr. Anchundia was to receive for his transportation function of a single load of cocaine was especially minimal in light of the street value of the drugs he was transporting.
(vi) He had no proprietary interest in the criminal activity and was simply being paid to perform certain tasks (*i.e.*, assisting in the transportation of drugs).

Therefore, based on both the *De Varon* factors and the U.S.S.G. §3B1.2(b) factors, Mr. Anchundia should receive a 2-level minor role reduction and a corresponding 4-level U.S.S.G. §2D1.1(a)(5) adjustment in his base offense level. With these two decreases, Mr. Anchundia's properly-calculated advisory guideline imprisonment range is 57 - 71 months. This advisory range is reasonable given Mr. Anchundia's role in the offense, and a final sentence within this range is no higher than necessary to accomplish all of the goals of sentencing.

**REQUEST FOR A REASONABLE SENTENCE**

In light of the mitigating history and characteristics of Mr. Anchundia as well as the facts and circumstances surrounding the non-violent nature of his

7

offense, it is respectfully suggested that, if a §5K1.1 motion is filed in this case, a sentence of 60 months to be followed by a 5-year term of supervised release will be "sufficient but not greater than necessary" to accomplish all of the purposes of sentencing enumerated in 18 U.S.C. §3553(a). In the alternative, Mr. Anchundia seeks the statutory minimum ten year penalty.

Mr. Anchundia's personal history and characteristics reflect a lifelong struggle with extreme poverty and illiteracy. It appears that he assumed the role of breadwinner at a young age when his father abandoned the family, although this seems to have scarred him emotionally and he will not talk about it in any detail. His medical issues and drinking habits are no doubt linked to the anxiety he carried with him every day because he was the primary provider for the family after his father left nine years ago. Letters and photos from the family show an underprivileged life led in a reed home without running water, and describe Mr. Anchundia as a fisherman who supported his mother and younger siblings. There is no evidence whatsoever in this humble setting that Mr. Anchundia enjoyed a criminal lifestyle. It is apparent that in the wake of the natural disaster he made a decision to make quick money that would rebuild a home for his family and provide for his newborn baby.

Mr. Anchundia is a quiet man who deeply regrets this decision. A 5-year term of prison will be a specific deterrent and punishment for him, especially

because his Ecuadorian family and child cannot visit him at all, and cannot afford many phone calls either. He literally will not see his family until he returns to Ecuador many years from now, and will have limited contact by international phone and mail. This is an added punishment above and beyond that faced by most federal defendants. The isolationism of this original sentence and the potential for a 20-plus year term of prison if he returns again are also specific and general deterrents to any Ecuadorian contemplating the quick money offered by cartels in these smuggling ventures.

As stated, this is not only a non-violent offense committed by a defendant with absolutely no prior arrest or conviction history, but it is a case in which he arguably played a minimal role in the conspiracy. Mr. Anchundia is utterly replaceable in this scheme and could have been any fisherman plucked off the docks that summer. Mr. Anchundia holds no rank in the drug trafficking group that did the entire organization, planning and execution of this venture. Mr. Anchundia was a cog required to move product from "point A" to "point B" and nothing more. Even if this Court determines that his role does not meet the legal and guideline standards for a reduction, we argue it should account for a downward variance.

Therefore, the mitigating history and characteristics of this defendant, including his extreme lifelong poverty, financial motivation for committing this crime post-earthquake, relative youth and familial hardship, and illiteracy, as well

9

as the facts and circumstances surrounding the offense and Mr. Anchundia's role in the overarching conspiracy make up the totality of circumstances in which a reasonable sentence is no higher than five years (or alternatively the statutory minimum term of prison).

WHEREFORE, the Defendant, DENNY ANDRES MERO ANCHUNDIA, respectfully moves this Honorable Court to sustain his minor role objection, to grant the Government's "substantial assistance" motion, should one be filed, and based upon the factors enumerated in 18 U.S.C. §3553(a), to impose a total sentence no greater than 60 months of incarceration (or in the alternative ten years) to be followed by a 5-year term of supervised release.

Respectfully submitted this 8th day of November, 2016.

        DONNA LEE ELM
        FEDERAL DEFENDER

        *s/ Jenny L. Devine*
        Jenny L. Devine
        Florida Bar No. 647616
        Assistant Federal Defender
        400 N. Tampa Street, Suite 2700
        Tampa, FL 33602-3945
        Telephone: 813-228-2715
        Facsimile: 813-228-2562
        Email: Jenny_Devine@fd.org

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 8th day of November, 2016, a true and correct copy of the foregoing was furnished by using the CM/ECF system with the Clerk of the Court, which will send notice of the electronic filing to the following:

Daniel Michael Baeza, AUSA

*/s/ Jenny L. Devine*
Jenny L. Devine
Assistant Federal Defender